Sussex County Circuit Court.

HARRY R. PALMER, AN INFANT, BY HIS NEXT FRIEND, MAURICE E. PALMER, AND MAURICE E. PALMER, INDIVIDUALLY, PLAINTIFFS, v. SYDNEY WEBSTER, DEFENDANT.

Decided April 13, 1936.

For the plaintiffs, *Bassin & Bassin*.

For the defendant, *Dolan & Dolan*.

WOLBER, C. C. J. Plaintiffs sued the defendant in the Sussex County Circuit Court for damages arising out of an automobile accident. The case came on for trial on September 20th, 1935, and thereafter, and the jury brought in a verdict in favor of the plaintiffs. Thereafter a rule for a new trial was allowed, and the verdict as to the infant plaintiff was set aside as being inadequate, and a new trial was awarded as to damages only. At the last general election held in the county of Sussex, the defendant stood for and was elected to the office of sheriff of Sussex county. The case has been placed on the calendar for trial at the April, 1936, term of court.

Plaintiffs now move for either (1) a change of venue to some county other than that laid in the complaint; or (2) for a rule for a "foreign jury," upon the grounds that the

sheriff, who is the defendant, is thereby disqualified from summoning, impanelling or assisting in the selection of a jury in this case, because of his interest.

First, as to change of venue, this case as appears is pending in the Sussex County Circuit Court. The Circuit Courts of this state do not have jurisdiction or authority to sit at a place other than the county seat. A change of venue is an application which seeks to transfer the cause from the locality of the court itself to some other place for trial. In the Supreme Court, which has state-wide jurisdiction, and its cases may be tried at the various county seats, it is apparent that the change of venue may be effected, but generally, the Circuit Court has authority only to try cases in the county where it exists. In New Jersey, so far as I know, we have no statute expressly requiring the Circuit Courts to sit for the trial of actions or the transaction of other judicial business at the county seat; but there can be no question that the court is not authorized to hear or determine issues of fact at any other place, except when authorized so to do by statute or consent of the parties. The county seat is the proper place for the transaction of all public business, including such judicial business as arises in the county, except the hearing by the presiding judge of issues of law, *ex parte* applications, or such matters as may properly be brought before the court in chambers or vacation. All the authorities to which I have been directed hold that a court is without jurisdiction, at least in actions where issues of fact are involved, to proceed elsewhere, and that a trial conducted at some other place against the objection of one of the parties, is void. That rule may be found collected in 21 *Encyclopedia of Pleading and Practice* 605.

It has always been not only the understanding, but the practice in this state, that the court must convene for the transaction of its business at the county seat, except in the instances where it is expressly authorized by statute or by consent of the parties, to appoint some other place. Its records are on file with the clerk, who is required under our statute to keep his office at the county seat. A court house

is provided by the taxpayers at the county seat for the use of the court and other officials, and the Circuit Courts of this state have uniformly, since their organization, convened at that place, except when otherwise authorized by statute; as, for example, where the court house is destroyed, or unsafe, or unfit for the holding of court, or where no court house is provided at the county seat. The justice of the Supreme Court may appoint some convenient building in the vicinity of the place where the court is required to be held as a temporary place for the holding thereof. Further, under our statute, the time of holding the Circuit Court is fixed by the chief justice, or the justice presiding in the particular circuit. (An act relative to the Supreme and Circuit Courts (Revision of 1900), *Comp. Stat., pp.* 1712, 1713, 1714, 1715, 1716.)

All this implies that the court is authorized to hear and determine issues of fact at the county seat only, and that it has no authority or jurisdiction to try such issues at any other place, nor has it the authority or jurisdiction to transfer against the consent of the parties a case pending in its court to another court. The law on this subject is well expressed in the case of *Selleck* v. *Janesville,* 100 *Wis.* 157; 41 *L. A. R.* 563, where it is said:

"While there is no express statutory provision saying that the courts shall be held at the county seat, the fact that they have been so held since the state was organized, and the further fact that authority is given by law to the judge to appoint some other place to hold court than the place usually designated therefor, implies that it cannot be changed except for the causes stated in the statute. * * * The mischiefs that might arise from permitting a court to assume a vagrant character and to travel from place to place are so manifold that it requires no argument for their demonstration. It needs but the suggestion of the fact to bring to the mind the panorama of trouble that might follow, fatal alike to the rights of the parties and to the dignity of the court." *Bell* v. *Jarvis,* 98 *Minn.* 109; 8 *Am. & Eng. Ann. Cases* 938; 7 *R. C. L.* 993, § 22.

It is true that the circumstances of this case present an extraordinary one, but nevertheless the issues involved are wholly issues of fact, and despite this, plaintiffs are not without remedy against the alleged infirmity existing in this matter.

Accordingly, the motion for a change of venue of a case pending in the Circuit Court has no precedent, nor does authority exist for the same, in view of the immemorial practice and usage of conducting a case at the county seat and at no other place in actions pending in the Circuit.

Second, with regard to the motion for a "foreign jury," the situation indicates that the defect against a change of venue from an action pending in a Circuit Court has been supplied by the legislature in authorizing the judge of the Circuit Court to impanel a "foreign jury."

The statute provides (*Comp. Stat., p.* 2977, §§ 36a and 38) :

### V. FOREIGN JURY.

36a. Discretion of Circuit Courts to order.—Sec. 1. That the Circuit Courts of the respective counties of this state may, in their discretion, order trials by foreign juries in all cases which have been or which shall hereafter be commenced in any of such courts.

38. Direction of Venire and selection of jurors; expenses; by whom paid.—That whenever a foreign jury shall be ordered, the order for a jury shall specify the number of jurors to be returned, and the venire shall be directed to the sheriff of the court from which such jury shall be taken, and shall be returnable to the Circuit Court in which the issue is triable; the jurors shall be selected in the same manner as the general panel of jurors is selected, and shall be such as are competent jurors for the county from which they are taken; and the expense of summoning and returning such jurors, and of their attendance at the court shall be paid by the county within which such court shall be held.

I am satisfied that the sheriff is disqualified from serving in his capacity in assisting the jury commissioner, because he is the defendant in this case. *Cranmer* v. *Crawley*

(*Supreme Court,* 1790), 1 *N. J. L.* 43, and *Jones* v. *Woodworth, Ann. Cases* 1912 A 1134.

The question remains whether the discretion vested in the court to order a "foreign jury" should be exercised. There seems to be precedent for the summoning of a "foreign jury" in a proper case in order to obtain a *satisfactory* trial to both litigants. In *Hoboken* v. *Griffin,* 97 *N. J. L.* 16, it appeared that the taxpayers started an action in the Supreme Court against the mayor and commissioners for the alleged illegal use by them of public funds in aiding them in being re-elected. The venue was laid in Hudson county. Hoboken at that time was the second largest city in Hudson county, and the defendants were all members in public life and well known. The plaintiffs moved for a "foreign jury" upon the ground that a satisfactory trial could not be had in Hudson county for the reason that if the plaintiffs succeeded, the defendants might allege the zeal of the taxpayers in causing the result, and if the defendants were successful, the plaintiffs would have been dissatisfied and perhaps alleged that it came about by the powerful influence and political affiliations of the defendants. It was apparent that a satisfactory trial could not be had in Hudson county. Mr. Justice Swayze in part there stated:

"We are clear therefore that the plaintiff has the right in a proper case to a foreign jury and there have been recent precedents in this state. We are, therefore, under no necessity of discussing the question on fundamental principles and we refer to *Crocker* v. *Justices of Superior Court,* 94 *N. E. Rep.* 369, only for the purpose of calling attention to the admirable discussion of the subject, in the absence of a statute like ours, by Chief Justice Rugg, of Massachusetts. We agree with him, that it is a jurisdiction to be exercised with great caution and only after a solid foundation of fact has been first established, and that it should be resorted to only in aid of justice and should not be permitted to be employed as an instrument of destruction or as a means of delay. We also agree that it should only be used when the court is convinced that a satisfactory trial cannot be had in

the county where the venue would normally be laid. At common law the rule as stated in *Tidd. Pr.* authorizes a foreign jury when a fair and impartial, *or at least a satisfactory trial* cannot be had in the county where the action is laid. *Tidd Pr.* 723. It may well be that it was meant to save the right of the court in its discretion to order a foreign jury where a satisfactory trial could not be had, even when it could not be proved that there was difficulty in securing a fair and impartial trial. Ordinarily where it could be proved that a fair and impartial trial could not be otherwise had, justice would require a foreign jury; but it may well be, under our modern system of government and politics, that the same difficulty arising out of·the influence of powerful men would arise as arose at common law. Then the powerful men were men of high rank and great power. Now they may be politicians who control votes and thereby control the source of governmental power. A trial under such circumstances may be very unsatisfactory to the court even though there could be no proof affecting the fairness and impartiality of the jury at the time when the venue is laid or even when the jury is impaneled. It is the probability of untoward influence that justifies precautions by the court and they may be justified even though there is no ground for challenging the array."

The general philosophy so strongly imbedded in American jurisprudence that the administration of the law is and should be the firmest pillar of good government, must be a thing of action. The appearance of a litigant as the defendant in this case who is one of the officials assisting in the selection of a jury in "his own cause," tends to weaken the confidence of the people. The court makes no statement imputing the integrity or honesty of the defendant in the performance of his duties. However, the situation is such which he should seek to remove. The idea of maintaining the purity of the courts in their actions, and even so far as to occasion the inference of things that might cause suspicion or doubt, must at all times be removed, if not completely annihilated. I believe that no harm will come to either of the parties, and

the exercise of my sound discretion compels me to conclude that a "foreign jury" should try the issues between the parties herein.

Under the circumstances, the motion for a rule for a "foreign jury" is granted upon the ground that a satisfactory trial in this case cannot be held by a jury impaneled from the lists of jurors in Sussex county, in the selection of which the defendant, as sheriff of the county of Sussex, has participated, and a venire may issue, directed to the sheriff of Warren county to be returnable to this court in the same manner as the general panel of jurors is selected, and to be such as are competent jurors from the county of Warren, and that the expense of summoning and returning such jurors and of their attendance at the court, shall be paid by the county of Sussex.